Earl K. LONG v. Frank J. LOONEY, Chairman of the State Democratic Central Committee, et al.

In re James A. GREMILLION Applying for Writs of Certiorari, Prohibition and Mandamus.

No. 35754.

March 12, 1940.

Eugene Stanley, of New Orleans, for relator.

George M. Wallace, of Baton Rouge, for respondents.

Frank J. Looney, of Shreveport, amicus curiæ.

O'NIELL, Chief Justice.

The facts and issues in this case are stated in the opinion rendered today in the case entitled Earl K. Long v. Wade O. Martin, Chairman of the State Central Committee, et al., In re: James A. Gremillion applying for Writs of Certiorari, Prohibition and Mandamus, 194 La. 797, 194 So. 896. For the reasons given in that case:

The rule to show cause and the alternative writs of prohibition and mandamus issued by this court in these proceedings are now made peremptory; and, accordingly, the temporary restraining order granted by Judge James D. Womack on the 7th day of March, 1940, in the suit entitled Earl K. Long v. Frank J. Looney, Chairman of the State Central Committee, et al., No. 15138 of the docket of the 19th Judicial District Court, for the Parish of East Baton Rouge, is annulled and set aside; and the suit itself is ordered dismissed and the demands of the plaintiff rejected at his cost.

HIGGINS, J., concurs in the decree and hands down reasons in No. 35752, 194 La. 797, 194 So. 896.

195 So. 1

STATE ex rel. WOGAN et al. v. CLEMENTS, Com'r of Conservation.

No. 35685.

March 11, 1940.

John D. Miller and Charles P. Fenner, Jr., both of New Orleans, for respondents.

ODOM, Justice.

George T. Wogan and C. Layton Merritt, for themselves and others, filed this suit on August 28, 1939, against the Honorable Ernest S. Clements, Commissioner of Conservation of Louisiana, alleging that they were registered voters and taxpayers and that they had, on August 23 and again on August 24, 1939, gone to the office of the Department of Conservation in New Orleans during regular office hours and demanded of the defendant, the Honorable Ernest S. Clements, Commissioner of Conservation, the privilege of examining the books and records of the department; that on August 25, following, they had written the Commissioner, making a similar demand, and that, although it was his ministerial duty to grant to them the privilege which they demanded, he had failed and refused to present to them the books and records of his office for their inspection and had not appointed a time for the examination.

They prayed that an alternative writ of mandamus issue, directed to Commissioner Clements, "commanding him to permit relators to examine and copy the books and records of the Department of Conservation in his custody or under his control as such Commissioner of Conservation, and particularly all pay rolls and records pertaining to the employees of said Department, or to show cause to the contrary on such day and hour as the Court may designate".

A. P. Miceli, of New Orleans, and George M. Wallace, of Baton Rouge, for applicant.

The alternative writ was issued by the court, as prayed for, and was made returnable on September 5, 1939. Commissioner Clements in his answer to the rule to show cause set out two "main contentions" as his reasons why the demands of the relators should be rejected.

It is not necessary to review in detail the answer which he filed, for the reason that his contentions were concisely stated by the trial judge in his written opinion, which opinion is quoted with approval by counsel' for Commissioner Clements in their brief filed in this court. We quote them here as they are printed in the brief at page 3:

"(1) That at the time relators made their application to him for an examination of the books, that they did not show the fact that they are qualified electors, and proof of that should be made in the manner and form provided by the Constitution and laws of this State.

"(2) That at the time this application was made, that the books, papers, payrolls, and accounts, were in the hands of the Supervisor of Public Funds, and that this act does not apply to any record, paper, book, or document in the custody and control of the Supervisor of Public Funds."

Testimony was adduced at the trial of the case in the district court. There was judgment rejecting the demands of relators at their cost. They appealed to the Court of Appeal, Parish of Orleans. That court reversed the judgment of the lower court and rendered judgment in favor of relators. Its opinion was handed down on November 13, 1939, and is published in 192 So. 126. Rehearing was applied for on November 27 and was refused on December 11, 1939. Commissioner Clements filed his application for writs in this court on January 9, 1940, and the writs were granted in due course by this court on February 12, 1940.

On February 23, 1940, after the case was ordered up for review, counsel for relators filed a motion in this court, suggesting that, inasmuch as the questions of law involved in the case were of vital interest to the public, they should be permitted to argue the case orally, and requested that they be permitted to do so. To this request counsel for Commissioner Clements gave formal assent. We could not grant this request without departing from Section 4 of our Rule XI (see 191 Louisiana Reports xliv), which provides that oral arguments will not be allowed in any case coming before the court on a writ of review or under the court's supervisory jurisdiction.

We refused this request on March 1. Two days later, counsel for relators filed a brief in which they say, in sum, that the relief for which they pray should be granted for the reasons stated by the Court of Appeal. Four days later, on March 4, counsel for Commissioner Clements filed their brief in this court. In their brief they do not refer to the first of their two main original contentions, which, in substance, was that, at the time relators made their application to view and examine the books, they did not show that they were qualified electors and taxpayers, as required by the Constitution and laws of

the state. That point seems to have been abandoned at the trial of the case in the district court.

The point which they stress before us now is that, when and so long as the books of the Department of Conservation are being audited by the Supervisor of Public Funds, the books are under the supervision and control of the Supervisor, and for that reason electors and taxpayers have no right under the law to inspect and examine them.

The Court of Appeal in its opinion (192 So. 126, 131) cited and reviewed all the statutory law applicable to the issue involved. It stated clearly the contentions and arguments made by counsel for relators in support of their prayer for relief, and with equal care and precision stated the arguments advanced by counsel for Commissioner Clements as to why the relief prayed for by relators should not be granted. The court cited and quoted those sections and portions of sections of the statutes relied upon by counsel for both sides, and stated clearly the reasons on which its conclusions were based.

■ On further consideration of the case, our opinion is that the ruling of the Court of Appeal is correct and that the reasons assigned for its ruling are sound. Because we have reached this conclusion, it is unnecessary that we burden this opinion with a review of the law and the arguments made by counsel. That is unnecessary because it is not now contended that the Court of Appeal incorrectly stated the views held by counsel, nor is it suggested that the court failed to consider those statutes and specific parts thereof relied on by counsel. The controversy now revolves around the question whether or not the conclusions reached by the Court of Appeal are supported by the law which it construed. We think they are.

■ The Court of Appeal, after an exhaustive discussion of all the points raised and the laws applicable, said:

"It must be conceded, of course, that where there is a right to examine public records, those members of the public who wish to make the examination must do so in such a way and at such a time as will interfere as little as possible with the work of the official whose records are being inspected and as little as possible with the work of any other public official who may have the right to also inspect or audit those records. But, on the other hand, it is the definite public policy of the State that any qualified person may make such an examination, and it necessarily follows that the public official must lend all possible reasonable cooperation to make the examination convenient. These principles were recognized in Marsh v. Sanders, 110 La. 726, 34 So. 752. In fact, it is provided in the Act itself, in section 10, that the inspection to which the public is entitled shall not disorder, hinder, or disarrange the work or function for which the said record is intended."

The court stated its conclusions in the following language:

"We have reached the conclusion that the books and records which the relators seek to examine are in the custody and control of the Commissioner and not in the

custody and control of the Supervisor and that, therefore, because of the provisions of the pertinent statute, No. 242 of 1912 [as amended], it is the clear ministerial duty of the Commissioner to permit relators to make the examination under the conditions set forth in the statute."

The judgment of the court reads as follows:

"For the reasons assigned, it is ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and it is now ordered, adjudged and decreed that peremptory writs of mandamus issue directed to Ernest S. Clements, Commissioner of Conservation of the State of Louisiana, directing and commanding that he grant to relators, or to any of them, subject to the provisions of Act 242 of 1912, the right of examining, copying, photographing and taking memoranda of any of the records or books of his office, as Commissioner of Conservation of the State of Louisiana in charge of the Department of Conservation. Respondent to pay all costs."

The judgment of the Court of Appeal is affirmed.

HIGGINS, Justice (concurring).

The relator, Ernest S. Clements, Commissioner of Conservation of the State of Louisiana, applied to this Court for a writ of certiorari, complaining that the judgment of the Court of Appeal for the Parish of Orleans, 192 So. 126, 132, annulling the judgment of the lower court and granting peremptory writs of mandamus, directing and commanding him, in his official capacity, to permit certain citizens and qualified electors, or any of them, "the right of examining, copying, photographing and taking memoranda of any of the records or books of his office, * * * subject to the provisions of Act 242 of 1912," is erroneous in its application of the law to the uncontradicted facts. The writ was granted.

The eleven respondents (petitioners and relators in the district court), claiming that they are citizens and qualified voters of the Parish of Orleans, and that within the last twelve months they paid taxes to the State of Louisiana, filed suit against Ernest S. Clements, alleging that he is the Commissioner of Conservation of the State of Louisiana, in charge of the Department of Conservation, which has its legal domicile in the City of New Orleans, where it maintains its principal office and keeps its books, records and accounts, or the greater part thereof; that on August 23 and 24, 1939, petitioners Wogan and Merritt, for themselves individually, as registered voters and taxpayers, and also on behalf of the other petitioners, presented themselves at the office of the Department of Conservation, during regular working hours, and demanded of the Commissioner of Conservation, the privilege of examining the books and records of the Department, " * * * particularly the pay roll records of the said Department usually kept in said office; that on the 25th of August, 1939, your relators (respondents here) wrote, signed and caused to be delivered to the defendant a letter demanding the privilege of examining the books and records of the Conservation

Commission; * * * that it was and is the ministerial duty of respondent Clements, to present the books and records of his office to relators, or any of them, and to grant the relators all reasonable comfort and facility for the privilege of examining or copying the same, or, if for any lawful reason, such books and records were not available when demanded, to give notice thereof in writing and to fix the day and hour within three days for the exercise of the privilege of making the examination thereof; that, in spite of the duty imposed on him in the premises by law, respondent has failed and refused to present the books and records of his office to your relators, or any of them, has made no written reply to any of the aforesaid demands made upon him by relators, or any of them; and has appointed no time for the examination of his books and records by relators or any of them; that, as citizens and taxpayers, your relators are interested in ascertaining whether or not the business and affairs of the Department of Conservation have been and are being administered prudently and according to law;" and "that relators have no adequate remedy at law and that a writ of mandamus is necessary to protect their rights in the premises." They prayed "that an alternative writ of mandamus issue herein, directed to Honorable Ernest S. Clements, as Commissioner of Conservation, commanding him to permit relators to examine and copy the books and records of the Department of Conservation in his custody or under his control as such Commissioner of Conservation, and particularly all pay rolls and records pertaining to the employees of said Department, or to show

cause to the contrary on such day and hour as the court may designate."

The application for the writ was filed on August 28, 1939, and the district judge, on August 29, 1939, ordered the issuance of an alternative writ of mandamus, returnable on September 5, 1939.

The Commissioner, respondent, for return to the alternative writ, admitted that the relators had requested the privilege of examining the books and records of the Department as alleged, and averred that the reason why he was unable to permit the examination of the records was due to the fact "That the said books and records of the Department of Conservation are now and were on August 23, 24 and 28, 1939, and at all times since respondent qualified as Commissioner of Conservation, in the custody and control of the Supervisor of Public Funds of the State of Louisiana, and that therefore being in such custody and control of the Supervisor of Public Funds, Public Records Act (Act 242 of 1912) does not apply thereto."

The respondent also pleaded that the relators had failed to state or show to him that they were citizens, qualified electors, and taxpayers at the time of their request. He averred that on each occasion when the relators asked to examine the books and records of the Department of Conservation, he informed them that immediately before, and since his appointment as Conservation Commissioner, the books and records sought to be examined by relators were under the custody and control of the Supervisor of Public Funds, who had the statutory right thereto; that on July 25,

1939, when he was sworn as Commissioner of the Department of Conservation, all of the books and records of the Department were then in the hands of the Supervisor of Public Funds, in order that he and his assistants, under instructions received from the Governor of the State, make full and complete audit and examination of said books and records; that your respondent Commissioner was not and is not willing to take over in his custody and control these books and records of the Department of Conservation until a full and complete check, examination, and audit of their contents is made and a written report of said audit submitted to him by the Supervisor of Public Funds; that he has declined and still declines to assume the responsibility of taking custody and control of the books and records of the Department of Conservation, which have heretofore been under the custody and control of former officials of the Department of Conservation, until such time as a proper audit has been completed and a report thereof submitted to him by the Supervisor of Public Funds; and that the books and records of the Department have at no time been under his custody or control and that he will not accept them nor assume responsibility for their contents until they have been thoroughly audited and a written report thereof submitted to him. He prayed that the alternative writ of mandamus be recalled and annulled and that the relators' demand be rejected at their costs.

The matter was heard on its merits on September 5, 1939, and on the following day the district judge rendered judgment in open court, recalling and setting aside the alternative writ of mandamus and rejecting the relators' demand at their costs. The judgment was signed on September 12, 1939, and, on the same day, the relators applied for an appeal, which was immediately granted. The transcript was lodged in the Court of Appeal on the 21st day of September, 1939. Because of the usual statutory delays and the constitutional vacation period intervening, the opinion of the Court of Appeal was not delivered until November 13, 1939. 192 So. 126. A rehearing was applied for on the 27th day of November, 1939, and refused on December 11, 1939. An application for writ of certiorari or review was filed in this Court on January 9, 1940. No request for preferential consideration was made by either litigant. The matter was regularly allotted and we granted the writ on the 12th day of February, 1940. The case was submitted on briefs on March 4, 1940, under the rules of this Court.

Act 109 of 1918 unquestionably gives to the Supervisor of Public Accounts, now the Supervisor of Public Funds, the right to make an audit and examination of the books and records of the Conservation Department of the State of Louisiana. In fact, that statute makes it his duty to do so. It is difficult to imagine how the Supervisor of Public Funds, who demands to be furnished with public records, can be said not to have the custody and control of such records while he is making the audit and examination thereof. There is no doubt that it was necessary that an audit be made and that it was being made at the time the relators requested the

privilege of examining the records of the Department.

It is equally clear that under the provisions of Act 242 of 1912, known as the "Public Records Act," and under the provisions of Act 109 of 1918, the Supervisor of Public Funds has the right to the custody and control of not only the records which are peculiar to his own office resulting from his examination of public records, but also the public records of other officers and departments of State during the time he is examining and auditing them.

Section 9 of Act 109 of 1918 makes it the mandatory duty of public officers and employees in charge of the books and records of their department *"to furnish the Supervisor of Public Accounts with such papers, accounts, books or other documents as he has the right to inspect and examine under the terms of this Act."* (Italics ours.) This same section of the Act also gives him the right of "access to the office, or to such papers, accounts, books, or other documents as he has the right to inspect or examine," and also, the right to demand that the officer or his employees *"transmit to said Supervisor of Public Accounts such reports, statements of accounts or other documents upon request as provided by the terms of this Act."* (Italics ours.)

Section 1 of Act 242 of 1912, as amended by Act No. 255 of 1920, § 2 (generally known as the Public Records Act), defines "public records." Sections 2, 3, as amended by Act No. 185 of 1916, § 1, and sections 4 and 5, as amended by Act No. 255 of 1920, § 3, thereof expressly state that the provisions of the Act shall not apply to the records in the custody and control of certain public officials under certain circumstances. The pertinent exception is found in Section 3, as amended, which reads: *"That the provisions of this act shall not apply to any records,* writings, accounts, letters, letter books, photographs or copies or memoranda thereof *in the custody or control of the Supervisor of Public Accounts unless otherwise provided by law."* (Italics ours.) Sections 6, 7 and 8 provide that electors and taxpayers shall have the privilege of examining, copying, photographing and taking memoranda of any and all public records and the manner in which the privilege will be exercised. In recognition of the limitation upon the privilege to the elector or taxpayers, Section 8, in part, reads: "That this act shall and does hereby grant to any person authorized by Section Six or by Section Seven the privilege of examining, copying, photographing and taking memoranda of any public record, as defined and declared by Section One and *limited by Sections Two, Three, Four and Five,* * * *."* (Italics ours.) Section 9 specifically reiterates the recognition of the limitation on the privilege, for it is there stated that the privilege shall be exercised *"except as otherwise provided by this act."* (Italics ours.)

As our views are contrary to those expressed by the Court of Appeal in its interpretation of the law pertinent to the issues and are in accord with the conclusions reached by the trial court in its construction of the law, we quote the opinion of the district judge with approval:

"Reasons for Judgment.

"The Form of Proceeding—Mandamus.

"The rules of law for the issuance of a mandamus are established by the Supreme Court of Louisiana. The writ will not lie unless the action desired is of absolute obligation on the part of the person sought to be coerced, and the relator must show not only a clear legal right to have the thing done, but to have it done in the manner and form in which he desires the respondent to perform it. (See State ex rel. Texarkana, S. & Northern R. R. Co. v. Smith, 104 La. 370 [29 So. 40]).

"Statement of the Suit.

"Certain tax payers bring this suit directed at the Head of the Conservation Department of the State of Louisiana to compel him to turn over to their representatives certain books, records, papers, and payrolls of that Department for their audit and examination, and it is contended that it is the ministerial duty of Mr. Clements, the head of that Department of the State, so to do, by reason of the provisions of Act No. 242 of 1912, known as the 'Public Records Act.'

"Mr. Clements, through his Department, makes two main contentions:

"(1) That at the time relators made their application to him for an examination of the books, that they did not show the fact that they are qualified electors, and proof of that fact should be made in the manner and form provided by the Constitution and laws of this State.

"(2) That at the time this application was made, that the books, papers, payrolls, and accounts, were in the hands of the Supervisor of Public Funds, and that this act does not apply to any record, paper, book, or document in the custody and control of the Supervisor of Public Funds.

"The facts developed here are that the papers, documents, and records, at the time this application was made and now, are in the custody and control of the Supervisor of Public Funds who is making an audit of the accounts of the Conservation Department. The contention is made by the Voluntary Committee that as the books and records are in the Conservation Office that they should have equal access to them now as has the constituted officer of the State with a mandatory duty imposed upon him to make audits and examinations.

"These statements lead us to an examination into the law as to the rights, powers, and duties of the Supervisor of Public Funds as made manifest by the Constitution and laws of the State, and the rights, powers, and duties of the citizens of the State with no constituted authority, except that given by the terms of Act. No. 242 of 1912.

"The Law.

"The Office of the Supervisor of Public Accounts was abolished and the office of Supervisor of Public Funds created instead, by constitutional amendment. See Act No. 69 of 1936. Therefore, the Supervisor of Public Funds is an office created by the Constitution of the State.

"Act No. 69 of 1936 reads as follows:

" '(2) The office of Supervisor of Public Accounts is abolished, and in lieu thereof there shall be appointed by the Governor, a Supervisor of Public Funds, to serve at the pleasure of the Governor and who may be removed from office by the Governor for any cause by him deemed sufficient, and who shall have and exercise all authority and power now vested in the Supervisor of Public Accounts by Act No. 25 of 1910 (as amended by Acts Nos. 60 and 77 of 1912, No. 12 of 1916, No. 109 of 1918, and No. 32 of 1920) and such other authority and power as may be prescribed by law. The Governor shall fix his compensation, which, until so fixed by the Governor, shall be the same as that now paid the Supervisor of Public Accounts.'

"Section 3 of Act No. 109 of 1918 provides as follows:

" 'Said Supervisor of Public Accounts' (now, of course, the Supervisor of Public Funds) 'shall have authority to examine and audit the books and accounts of all public boards and commissions, or any department of the State government, and to that end shall have access to all papers, books and documents in all offices which he may examine or audit under the provisions of this Act.'

"Section 1 of Act No. 109 of 1918 provides for such assistants and clerical help to the Supervisor as may be necessary.

"Section 5 of Act No. 109 of 1918 provides:

" 'The Assistant Supervisors of Public Accounts, when acting under the instructions of the Supervisor of Public Accounts, shall have the same power and authority as is granted under this Act to the Supervisor of Public Accounts, except in the matter of administering oaths.'

"The Supervisor reports to the Governor (Section 6) and 'in all cases, the Supervisor of Public Accounts shall act under the direction * * * of the Governor.' (Section 7.)

"Section 9 of Act No. 109 of 1918 provides a penalty against 'Any public officer, employee, or other person who wilfully neglects or fails, or who refuses, to furnish the Supervisor of Public Accounts with such papers, accounts, books or other documents as he has the right to inspect and examine under the terms of this Act, or who shall wilfully deny him access to the office, or to such papers, accounts, books, or other documents as he has the right to inspect or examine, or who shall wilfully refuse or neglect to transmit to said Supervisor of Public Accounts such reports, statements of accounts or other documents upon request as provided by the terms of this Act, or who, otherwise in any manner, shall obstruct or impede said Supervisor of Public Accounts in making the examination required by this Act.'

"It has been contended by the relators here that under the provisions of Section 3 of Act No. 242 of 1912 that only the records of the State Bank Examiner and the Supervisor of Public Accounts are exempt from an examination by the Citi-

zens Committee. But, construing this section of the act as a law in pari materia with Section 9 of Act No. 109 of 1918, it clearly shows that such a contention is absolutely untenable.

"From the above statement of the law, it is clear; (1) that the Supervisor of Public Funds and/or his assistants have the right to examine and audit the papers, accounts, and other documents of the Department of Conservation and that this right includes every public record of the Department of Conservation; (2) that the Supervisor of Public Funds has access to all such records of the Department of Conservation and that he is entitled to custody and control of such records while they are undergoing his examination and audit; (3) that no officer or employee of the Department of Conservation, or any other person, may, without subjecting himself to criminal prosecution, refuse to furnish such records to the Supervisor or deny him access to the office or to such records, or in any manner obstruct or impede the Supervisor in making the examination required by the act.

"If relators are permitted to examine the records while they are undergoing an examination and audit by the Supervisor of Public Funds, and while they are necessarily in the custody and under the control of the Supervisor for such purposes, this would be a clear violation of the law as above recited, and a mandamus certainly cannot issue in violation of the law.

"Now, Section 3 of Act No. 242 of 1912 states that the Public Records Act, as amended, shall not apply to any record in the custody or control of the Supervisor of Public Accounts. This is a broad general provision including any record in the custody and control of the Supervisor. The office of Supervisor of Public Accounts was in existence under Act No. 25 of 1910 when Act No. 242 of 1912 was passed. If the Supervisor of Public Funds has either the custody or control of the records of the Department of Conservation when application is made to examine them by a person qualified under the Public Records Act, such records being in his custody and control, are exempt from the provisions of the Public Records Act. The law is that the act shall not apply to any record in the custody or control of the Supervisor.

"Custody and control both in fact are necessary to the Supervisor in order that he may exercise his statutory right of access to the records and his statutory duty not only to audit but to examine the same. There is no room for wandering by construction from the plain and unambiguous terms of the provisions. If this statement was not true, a corrupt official could indefinitely delay an examination and audit of the records of his office through collusion with an elector or taxpayer and the causing of examinations and inspections of such records by a qualified person during the period of the Supervisor's examination and audit.

"Section 3 of Act No. 242 of 1912 [as amended] declares:

" 'The provisions of this Act shall not apply to any records, writings, accounts,

letters, letter books, photographs * * * or memoranda thereof in the custody or control of the Supervisor of Public Accounts unless otherwise provided by law, nor shall the provisions of this Act apply to any records, writings, accounts, letters, letter books, photographs or copies or memoranda thereof in the custody or control of the Examiner of State Banks.'

"Persons Entitled to Examine Public Records.

"Those who under Act No. 242 of 1912, as amended, are entitled to examine public records fall into four categories, as follows:

"(1) Any elector of the State of Louisiana.

"(2) Any taxpayer who has paid any tax collected ·by or under the authority of the State of Louisiana within one year of the day in which the taxpayer shall apply to exercise the privilege granted by the act. (Sec. 6.)

"(3) Any person bearing a certificate of authority as agent or attorney of fifty electors.

"(4) Any person bearing a certificate of authority of ten taxpayers who have paid any tax collected by or under the authority of the Legislature of the State of Louisiana within one year of the day on which such certificate was made. (Sec. 7.)

"Section 8 of Act No. 242 of 1912, grants to such persons the privilege of examining, copying, photographing, and taking memoranda of any public record as defined and declared in Section 1 [as amended] and limited by Sections 2, 3 [as amended], 4, and 5 [as amended]. Thus, we have here a Legislative interpretation of their own act, to-wit, Act No. 242 of 1912, in that the Legislature declares by directory provisions that the right granted to the citizens in the Public Records Act is limited by Section 3, which should be sufficient to show that the proposition advanced by relators that the right of the citizens and tax payers to examine the public records is at least as valid as the right of the Supervisor of Public Accounts to audit them is untenable. The right of the electors and taxpayers under the Public Records Act is limited by the right of the Supervisor to access and examination and to audit the records, which, under the law, includes the right of custody and control of the records during such examination and audit, and the electors and taxpayers cannot impede the Supervisor under criminal penalties from exercising his statutory right of access, examination, and audit, nor may they lawfully invoke their right to examine public records while they are in the custody and control of the Supervisor while he is making his examination and audit.

"In a recent case of State ex rel. Noe v. Knopp, 190 So. 135, it was held by the Court of Appeal of the Parish of Orleans that the Court may not by construction attempt to change the meaning of the plain and unambiguous language of an enactment, and when the intention of an enactment is clear, there is no room for

construction and no excuse for interpolation.

"This court, therefore, is bound to give effect to the provisions of the law and to hold that while the Supervisor of Public Funds is engaged in examining and auditing public records, such records are in his custody and control, and, during the period of such examination and audit, the provisions of the Public Records Act do not apply.

"The respondent has declared upon the witness-stand that he demanded an audit of these accounts; he is new to the office; he has taken over a tremendous responsibility during exciting times; he is responsible to the people of the State and to the the Chief Executive of the State who named him to his office. It is a consummation devoutly to be wished for, that all of our public officers give loyal allegiance and faithful service to the duties and responsibilities of their respective offices. This is what is hoped to be accomplished by the citizens who are the relators in these proceedings. Mr. Clements is head of the Conservation Department, has used good judgment and is acting as a prudent business man when he requires and demands that a most exacting audit of his office should be made. Criticism directed at his course should not be made until both sides are heard. The Supervisor of Public Funds should give an audit just as promptly and speedily as possible so that the citizens and electors may have access to the books, papers, and pay rolls of that Department. They have the absolute legal right to such access when not in the custody and control of the Supervisor of Public Accounts.

Considering the various audits of all state departments which are now being made and the vastness of the Conservation Department, and the scrutiny which should be exacted in the examination of all books, papers, and documents, this Court is not prepared to say that the Supervisor of Public Funds is guilty of any unconscionable delay in making the audit, but rather, the evidence before me is that it takes considerable time in so doing."

The petitioners Merritt and Wogan, upon the trial of the matter on its merits, testified that they were members of the Citizens Voluntary Committee and that, on the dates alleged in the petition, they requested Commissioner Clements to permit them to examine the books and records of his office, and particularly the pay rolls, but that he declined to do so, stating that "the records were in possession of Mr. Shattuck, the Supervisor of Public Funds," for the purpose of being audited.

Commissioner Clements testified that when the former Conservation Commissioner resigned and the Governor requested him to accept the appointment, he agreed to do so on the condition that all of the books and records of the Conservation Department be thoroughly examined and audited, and that a written report as to their contents be made to him, before he would assume any responsibility in connection therewith; that when he took his oath of office on July 25, 1939, he learned that Frank S. Shattuck, the Sup-

pervisor of Public Funds of the State of Louisiana, had been placed in charge of all of the records and books of the Department, by the Governor of the State, on July 24, 1939, and that Emmett Williams, Assistant Supervisor of Public Funds, was in the office of the Conservation Commission; that he never intended, nor did he actually assume or take custody and control of the books and records of the Department, because the examination and· audit by the Supervisor of Public Funds was not completed; that he furnished the pay roll of the Department of Conservation, which was published in the Times Picayune and the New Orleans States, daily newspapers; and that he was ready and willing whenever the audit was completed to permit any one to examine the books and records of the Department, as he had nothing to hide and had always properly handled public funds entrusted to his care and his books for the past fifteen years were open to the public. We quote the following from his testimony:

" * * * I think I told Mr. Wogan that those records were under the custody and control of the Supervisor of Public Funds for the State of Louisiana. I might state that when I was approached about accepting this appointment, I demanded of the Governor of this State a complete audit of the records of the Department of Conservation. I think this is absolutely necessary when you take over any Department of the State, or any business office where funds are involved; especially one as important as this Department, which is one of the largest in the State. Certainly, I don't want to be responsible for the actions of another; and, in my opinion, it was necessary that I should have a complete audit of the books of this Department. I became responsible, as an individual, for the sane administration of the contents and affairs of that office in an economical way. I would like to state also that I have nothing to hide; nothing to hide in the way I have handled public funds in my care. For fifteen years my books were always open to the public. * * *

" * * * I wish to state that I haven't taken an arbitrary position in this matter. As soon as the audit of the Supervisor of Public Funds is completed, my books will be open to the public. * * * "

In connection with Commissioner Clements' testimony, he filed copies of two letters dated August 28 and August 31, 1939, respectively, addressed by him to the relators and the Citizens Voluntary Committee of Louisiana, at New Orleans, both of which letters are acknowledged, in writing, to have been received, and which outline the reasons for his inability to comply with the request of the Committee to permit an examination of the books and records of the Conservation Department, which are the same as those given in his answer and testimony.

Frank S. Shattuck, Supervisor of Public Funds, of the State of Louisiana, testified that, on July 24, 1939, upon the instructions of the Governor. of the State, he and three of his assistants took custody and control of all of the records and books of

the Conservation Department for the purpose of making a thorough audit and examination thereof, and that they were in charge of those records prior to and subsequent to the time that Clements qualified as Commissioner of Conservation; that the Department of Conservation is one of the largest Departments of the State and that it is composed of a number of divisions; that he was unable to approximate just how long it would take to complete the examination and audit of the books and records of the Department; that he had three assistants working, making the examination and audit and who gave their time to it other than when the Grand Jury requested certain information, and that he (Shattuck) also employed part of his time in the work; that the books and records were not removed from the Conservation Department's office in the City of New Orleans to the witness' office at Baton Rouge, but that the examination and audit was being made in the New Orleans Commissioner's office; and that certain of the employees of the Conservation Department took the books out in the morning and replaced them in the evening. He further testified that he had "three assistants who are there daily in charge of the books. We try not to interfere with the regular routine work of the Department that has to go on. Anything that we want to examine, unless there is some valid reason why we should not do so, we examine. It might be possible that we want some books that they are working on. We might wait a few minutes if they are in use. We have complete custody and control of all records.". He further stated if the taxpayers and electors, or their representatives, were permitted during the examination and audit to also examine the books, records and accounts of the Department of Conservation, that "It could have the effect of absolutely stopping my (his) examination." (Parenthesis ours.) When asked: "Have you surrendered the custody or control of the books, records and accounts of the Department of Conservation to Ernest S. Clements, since he has been Commissioner of Conservation?" He replied: "Only for the office's current use. They have not been turned over to Mr. Clements, as Commissioner." He further testified that he had been an auditor for the State of Louisiana since September 1, 1920.

There was no evidence introduced by the relators tending in any way to contradict the testimony of Commissioner Clements and Supervisor Shattuck that all of the books and records of the Conservation Department were under the control and custody of the Supervisor of Public Funds prior to the time that Commissioner Clements was inducted into office and that he had never surrendered the custody and control of the books and records of the Commissioner of Conservation, who had declined to accept them until the audit was completed and a written report made thereof to him.

The trial judge concluded from this uncontradicted testimony that the books, records and accounts of the Department of Conservation were in the custody and control of the Supervisor of Public Funds.

The Court of Appeal differed with him and, based upon the fact that the books, records and accounts were still in the office of the Commissioner of Conservation in New Orleans, and that the employees of the Department made entries of current matters in them and took the books out in the morning and put them away at night, held that the Supervisor of Public Funds only had access to the books, records and accounts of the Department, as distinguished from their custody and control.

The undisputed testimony of the two public officials, Clements and Shattuck, that all of the books, records and accounts of the Conservation Department of the State were in the custody and under the control of the Supervisor of Public Funds is so clear and positive that we are unable to see how it could be construed to mean that the Supervisor had only exercised his right of access thereto. Shattuck and Clements were not talking about any legal conclusions as to what was meant by "custody and control" of the books and the records of the Department, as they were dealing with the physical situation that the books, records and accounts had been taken in full charge by the Supervisor of Public Funds, upon the instruction and direction of the Governor, prior to the time that Clements qualified as Commissioner of Conservation, and he declined to be responsible for them until the examination and audit was completed and a report thereof was in his hands.

I am of the opinion that upon the record as made up at the time this case was decided by our learned brother below, his judgment was correct.

Due to the fact that it has taken considerable time for this matter to be litigated in the various courts, the additional question is now presented of whether or not the Supervisor of Public Funds has had reasonable and adequate time within which to complete his audit and examination of the books, accounts, and records of the Department and should have returned them to the custody and control of the Conservation Commissioner.

This suit was instituted on the 28th day of August, 1939, and, therefore, several months have elapsed from that date to the present time. The relators, during this entire period, have insisted upon their privilege under the statute of examining the records in question, and the respondent has denied them the privilege solely on the ground that the Supervisor of Public Funds was making an audit and examination of these records.

Under Sections 10 and 11 of Act 242 of 1912, the burden is placed upon the public officer in custody and control of the records of his office to show to applicants, who seek to examine them, why they are unavailable. The record shows that the Commissioner of Conservation assigned legal and sufficient reasons for the unavailability of the books and records of his department up to the time this case was disposed of in the district court. The record is silent as to any legal and sufficient justification for the continued denial to the relators of the privilege of exam-

ining the books and records. While Mr. Shattuck, the Supervisor of Public Funds, testified that he could not estimate the length or period of time which would be required by him to complete the audit and examination, he did state that he and his three assistants were working regularly and gave no testimony from which it might be reasonably implied that it would be necessary for him to have the custody and control of the books and records for several months, in order to complete his work. At the time the case was tried in the district court, the Supervisor had had the custody and control of the books for about one month and the trial judge comments in his opinion that that was not an unreasonable length of time. However, this cannot be said of the situation at the present time, because several months have elapsed since then.

While the statutes in question give the Supervisor of Public Funds the right to make the audit and examination and to have custody and control of the books and records during that period, the lawmakers never contemplated that he could indefinitely maintain exclusive custody and control of the books and records in connection with an audit and examination thereof, but, on the contrary, that he should have a reasonable and sufficient length of time within which to discharge his duties and then return the custody and control of the books, records and accounts to the proper officer. No attempt was made to show that there was any unusual situation which would require a prolonged period of time within which to finish this work and no request has been made to have the case remanded to the district court for the purpose of receiving such evidence. In the absence of proof to the contrary and as the law places the burden on the respondents to show that the records are unavailable, it is our opinion that the writ of mandamus should be made peremptory on that ground.

Furthermore, Mr. Shattuck having testified that after certain records were audited it was not likely that they would have to be re-examined, it is clear that the records which had been audited should have been returned to Mr. Clements' custody and control, as there was no further need for the Supervisor to retain them.

For these reasons, I concur in the result.

FOURNET, Justice (concurring).

Under the express provisions of Act 242 of 1912, " * * * any elector of the State of Louisiana or any taxpayer who has paid any tax collected by or under the authority of the State of Louisiana * *" (Section 6) or " * * * any person bearing a certificate of authority as the agent or attorney of fifty electors or of ten taxpayers who have paid any tax collected by or under the authority of the General Assembly of the State of Louisiana * * *" (Section 7) *is granted the privilege* of " * * * examining, copying, photographing and taking memoranda of any public record, as defined and declared by Section One and *limited by Sections* Two, *Three,* Four and Five

* * *" (Section 8), provided they make application to the officer having custody and control of the records sought to be examined, in the manner contemplated by and provided for in the act. (Italics mine.)

The limitation placed upon this privilege by Section 3, as amended, is as follows:

"* * * *the provisions of this Act* [granting to the citizens and taxpayers designated in Sections 6 and 7 the privilege of viewing the public records] *shall not apply to any records, writings, accounts, letters, letter books, photographs or copies or memoranda thereof in the custody or control of the Supervisor of Public Accounts* * * *."* (Italics and brackets mine.)

Thus it may be seen from the foregoing that the lawmakers have, in most clear and unambiguous language, granted to the citizens and taxpayers of this state the privilege of examining, copying, photographing, and taking memoranda of any public records, and make it the mandatory duties of the officers in whose custody or control these records are placed *to facilitate this privilege upon proper application,* subject to the limitations placed thereon by Sections 2, 3 (as amended), 4, and 5 (as amended) of the act, the limitation placed by Section 3 (as amended), being when the records are in the custody and control of the Supervisor of Public Accounts.

That the lawmakers intended audits of public records should be made without interference is accentuated by their later act, No. 109 of 1918, defining the duties and powers of the Supervisor of Public Accounts (now Supervisor of Public Funds under the authority of Act 69 of 1936), for this act makes it his duty to examine and audit the books and accounts of all public boards and commissions and any department of the state government (Section 3) and makes it a misdemeanor (Section 9), subject to fine or imprisonment, or both, at the discretion of the court, if "* * * any public officer, employee, or other person who wilfully neglects or fails, or who refuses, to furnish the Supervisor of Public Accounts with such papers, accounts, books or other documents as he has the right to inspect and examine under the terms of this Act, *or who* * * * *in any manner, shall obstruct or impede said Supervisor of Public Accounts in making the examination required by this Act* * * *."* (Italics mine.)

It was never the intention of the lawmakers that the citizens and taxpayers of this state be denied the privilege of examining, copying, photographing and taking memoranda of public records under the pretense of an audit or by an unnecessary and unreasonable prolongation of such audit, and that, in this manner, the purpose of the act be frustrated. It necessarily follows, therefore, that when a public officer is ruled into court in a case such as this, and the same is pleaded, it is incumbent upon him to show that an audit of the books of the particular department was necessary, that such an audit was in progress at the time application was made to view and examine the rec-

848

ords, that the work is being done with due diligence, and that the audit is not unnecessarily delayed or an unreasonable time consumed in its completion.

A review of the record in this case shows that the relators, on August 23 and 24, 1939, made application to examine the records of the Department of Conservation. At that time the records were, according to the testimony of the Supervisor of Public Funds on the trial of the case, in his (the Supervisor of Public Funds's) hands for auditing purposes. The officer in charge of the office, respondent, so informed the relators when their application was made, and he also informed them that their request would be granted when the audit was completed. Nevertheless, four days thereafter, on August 28, 1939, the relators filed this suit seeking a writ of mandamus to compel the respondent " * * * to permit relators to examine and copy the books and records of the Department of Conservation in his custody or under his control as such Commissioner of Conservation, and *particularly all pay rolls and records pertaining to the employees of said Department * * *."* (Italics mine.) The respondent, in his defense, set up, substantially, the reasons he had given the relators as to why the records they sought to examine were not available to them at that time.

The relators have made no allegation in their petition, nor have they at any time during the entire course of these proceedings contended, that an audit of the books of the Department of Conservation was not actually being made at the time they applied to examine, copy, photograph, and take memoranda of these records; or that such an audit was unnecessary; or that it was being made for the purpose of withholding the records from the relators; or that an unreasonable time was being consumed in making the audit. The only issue presented by the pleadings in this case was whether or not the relators, by reason of the privilege granted them under Act 242 of 1912, were, on August 23 and 24, 1939, entitled to examine the records of the Department of Conservation, despite the fact that the books were, at that time, in the hands of the Supervisor of Public Accounts and being audited by his office. In other words, the sole question in this case is whether or not relators had a right to examine, copy, photograph, and take memoranda of the books and records of the Department of Conservation on August 23 and 24, 1939, under the facts and circumstances of the case on that date.

The trial judge in a well considered written opinion, handed down on September 12, 1939, ruled that under the provisions of Act 242 of 1912 the relators were not entitled to the relief sought while the records of the Department of Conservation were in the custody and under the control of the Supervisor of Public funds for the purpose of auditing same, and particularly in view of the fact that it was not pleaded that the time being consumed in the making of the audit was unreasonable. On the contrary, he found, as was disclosed by the uncontradicted evidence in the record, that the

audit had only been recently begun; that it was being pursued with due diligence; and that to allow the examination, copying, photographing, and taking of memoranda of these records by anyone during the progress of the audit, would seriously hinder, hamper, interfere with, and impede the audit.

On appeal, the judges of the Court of Appeal for the Parish of Orleans, in an opinion handed down on November 13, 1939, reversed the trial judge and ruled, in effect, that the relators had a right to see the books of the Department of Conservation at any time, even when they were being audited by the Supervisor of Public Accounts. 192 So. 126.

A writ of certiorari or review was applied for in this court on January 9, 1940, and allotted to a member of the court (the author of the majority opinion) in the usual manner, no application for a preference in the case having been made by either the relators or respondent. A report was made on the case by the member of the court to whom it had been assigned on the next regular conference day (the Friday before Monday, February 12, 1940, decision day), and, after a careful examination of the record by several members, the majority of the court, being of the opinion that the interpretation placed on the act by the Court of Appeal for the Parish of Orleans was erroneous, granted the writ. The case was regularly allotted and submitted on briefs on March 4, 1940.

I cannot agree with the interpretation the Court of Appeal, adopted by the majority opinion of this court, places on the provisions of Act 242 of 1912. The provisions of the act are unambiguous and, in my opinion, clearly reflect the intention of the lawmakers to limit the privilege it granted by the act to the citizens and taxpayers while the public records are under the supervision and in the control of the Supervisor of Public Funds for audit, obviously for the purpose of facilitatng such audit. It is a matter of common and practical knowledge that an auditor would be seriously handicapped and could not properly and efficiently perform his duties if the books, while being audited, were subjected to the unlimited and unrestricted inspection of and examination by the citizens and taxpayers of this state.

Now that six and a half months have elapsed since the application was made I would think that a reasonable time has elapsed for the completion of the audit of the particular records that relators were seeking to examine at the time their application was made and it is my opinion that they are entitled to view the records and should be permitted to do so and, for this reason, I concur in the results of the majority opinion.

PONDER, Justice (concurring).

I am of the opinion the plaintiffs are entitled to the right to examine the records of the Conservation Department. The Supervisor has had knowledge of the plaintiffs' request to examine the records for several months. The law contemplates that the audit must be made within a reasonable length of time, and especially would this be the case where a taxpayer has made known

his desire to examine the records. However, I do not agree with the majority opinion as to the interpretation of the Public Records Act and Act 109 of 1918. Under the provisions of the Public Records Act, the taxpayer does not have the right to examine records in the custody or control of the Supervisor. This, in my opinion, is not restricted to the records in the office of the Supervisor, but applies to any record under his control. It is to be borne in mind that the records in the office of the Supervisor are mainly reports taken from original records of some other department. Under the provisions of Section 9 of Act 109 of 1918, a public officer is compelled to furnish the records to the Supervisor for his inspection and to give the Supervisor access to all of the records in his office. An officer or any other person is prohibited from obstructing or impeding the Supervisor in any manner in making the examination. The language used in the statute, "from obstructing or impeding in any manner," is very broad and comprehensive. A penalty is provided for the violation of the Act. This, in my opinion, gives the Supervisor a superior and exclusive right over the books while an audit is being made, which is, in effect, control of the records. In my opinion, under our laws governing the Supervisor, in addition to his duty to audit, he acts in the capacity of an investigating officer. It is through the means of this office that the Governor keeps a check or tab on the various departments under him and ascertains irregularities or wrongdoings in such. From the very purpose and nature of this office considerable authority is necessary for it to properly function and serve its purpose. I believe it was the intention of the Legislature to give the Supervisor control over books and records while auditing them. Frequently it is necessary to withhold information while an audit and investigation is being made and especially so if there is any question of wrongdoing in order that the wrongdoers might be apprehended. Most investigating officers and investigating boards are clothed with secrecy for that purpose. The plaintiffs do not claim that there was any abuse or wrongdoing on the part of any one in this case and there is no proof to that effect in the record other than that they were refused the right to see the records. As I see it, the issue was solely the interpretation of the Public Records Act and Act 109 of 1918. However, I do not believe it was the intention of the Legislature to limit the taxpayer's right to examine the records to an unreasonable or indefinite period of time.

For the reasons assigned, I concur in the decree.